412 F.2d 338
 Petition of Aaron BARR for a Writ of Habeas Corpus, Petitioner-Appellee,
v.
Robert W. WEISE, Adjutant General, Department of the Army; Stanley R. Resor, Secretary of the Army; Macon A. Hipp, Commanding Officer, Fort McClellen, Respondents-Appellants.
 No. 415.
 Docket 33032.
 United States Court of Appeals Second Circuit.
 Argued March 25, 1969.
 Decided June 16, 1969.
 
 Patricia M. Hynes, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Alan B. Morrison and Michael D. Hess, Asst. U. S. Attys., New York City, on the brief), for respondents-appellants.
 David Blasband, New York City (Linden & Deutsch, Peter C. Clapman, New York City, on the brief), for petitioner-appellee.
 Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 The petitioner, Aaron Barr, in May 1965 enlisted for a period of six years as a member of the United States Army Reserve. He served his period (actually some eighteen weeks) of active duty and upon separation was assigned to the Reserves. In March 1967 the Army promulgated new criteria and procedures for discharge if (a) "Dependency/hardship"; (b) "Religious reasons" existed. Supported by a letter from his then employer in Columbus, Ohio, petitioner in July 1967 sought discharge because he was the sales manager for "Varsity House, Inc." This request was denied. Thereafter in September 1967 petitioner reapplied for discharge on the theory that it should be granted "from the viewpoint of National Health, Safety, or Interest." In October the Army decided that petitioner's request was "for the benefit of the Company rather than NHSI" and that his employment was "not critical nor essential to the main of NHSI."
 
 
 2
 Petitioner then moved to New York and in November 1967 again applied for a discharge on the ground that he had commenced his "studies in The Church of Scientology to become a Minister." His enrollment was confirmed by a letter from the Reverend Robert H. Thomas, President of the Church, who also stated that "The Church of Scientology of New York was a duly recognized religious corporation pursuant to Articles of the Religious Corporation Law of New York," incorporated in 1955.
 
 
 3
 The Army, acting through the office of the Chief of Chaplains, concluded in January 1968 that the educational requirements for appointment of clergymen to the Army should also be applicable to discharge from the Army Reserve. Furthermore, said the office of the Chief of Chaplains, "The Scientology Center is not listed in the Educational Directory published by the Department of Health, Education and Welfare or currently recognized by that Department" and that additional information was desired to enable it to ascertain whether the educational requirements for an Army Chaplain had been met. But all this is quite irrelevant since petitioner has indicated quite convincingly that he wishes no part of the Army, even as a Chaplain in the Reserve.
 
 
 4
 The Army reviewed petitioner's previous applications ("request denied 5 Oct 67. Em encl May 65 — ETS 17 May 71 — comp! ACDUTRA 28 Dec 65 — Asgn Anl Tng Con Gp 28 Dec 65 due to ocupation [sic].") and advised petitioner in February 1968 that as a theological student "your case does not meet the requirements for discharge from the United States Army Reserve."
 
 
 5
 In July 1968 petitioner decided to obtain a more sympathetic understanding of his situation from the federal courts which so frequently are forced to become the final arbiters in many divers fields. This he did via the popular habeas corpus approach to prevent his unlawful detention by the Army and to obtain a judicial review of the Army's denial of a discharge despite the fact that he possessed a "status as a full-time student of the ministry in the Church of Scientology."
 
 
 6
 The trial court analyzed the appropriate Army regulations and the H. E. W. criteria in its "Educational Directory" and concluded that, because the exclusion of the Academy of Scientology (the Church's alleged Divinity School) from the "approved list" was the sole basis for the denial, "the Army capriciously neglected to consider either the standards set by the Academy of Scientology or the established character of the Church of Scientology of New York." In support of this conclusion the court found that:
 
 
 7
 "* * * the Church of Scientology of New York is a duly recognized religious corporation under the laws of the State of New York. It has been in existence since November 15, 1955. The membership of the Church of Scientology throughout the United States has grown to between 75,000 and 100,000 parishioners. It is estimated that there are approximately 500,000 members in the various Churches of Scientology throughout the world. The duties and functions of its ministers are similar to those of the clergy of other religious denominations. Their ministers hold services every Sunday, officiate at funerals, christenings and weddings, counsel their parishioners, and conduct confessionals. The Church has three ministers duly licensed by the State of New York as well as other ministers licensed by other states. There are some 50 full-time students in the Academy of Scientology who devote approximately 35 to 40 hours per week to their training. Their course of study includes instruction in the basic tenets of their Church and its system of ethics, and on the methods of counseling parishioners as to their personal, spiritual and ethical affairs. In order to qualify as a minister, students must pass oral and written examinations."
 
 
 8
 Apparently all previous proceedings and decisions have become academic because this court has just been advised that the petitioner no longer is Private Barr but the Reverend Barr; that thanks to the decision below he was able to complete his ministerial training in one year; and that, since his appointment effective February 14, 1969 as a Chaplain of the Church in New York, the "Reverend Barr is now performing the functions of a minister in the Church."
 
 
 9
 This somewhat rapid change of status therefore requires a slightly different judicial approach. No longer are we dealing with a mere divinity student but with a full-fledged minister. The only question which remains is: Is petitioner a minister of a recognized religion?
 
 
 10
 There is no need to repeat the interesting comments and the results of the exhaustive research made by Judge Skelly Wright to be found in his very able opinion in Founding Church of Scientology of Washington, D. C. et al. v. United States of America, 409 F.2d 1146, D.C. Cir., 1969 (February 5, 1969). He, writing for the majority, concluded, as we plagiaristically conclude, "On the basis of the record before us, the Founding Church of Scientology has made out a prima facie case that it is a bona fide religion and, since no rebuttal has been offered, it must be regarded as a religion for purposes of this case." Judge Wright accepted the same factual background relied upon by Judge Tenney here.
 
 
 11
 However, we also adopt Judge Wright's caveat and "We do not hold that the Founding Church is for all legal purposes a religion." In this reservation we are reinforced by the decision of the United States Court of Claims in Founding Church of Scientology v. United States, 7 CCH 1968 Stand. Fed. Tax Rep., ¶ 7927, August 7, 1968, holding that the Church was not exempt from income taxes because of its substantial nonreligious and commercial activities.
 
 
 12
 Nor is it necessary to encumber the law reports with repetitions or elaborations of the discussions as to what constitutes a religion to be found in United States v. Ballard, 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1943) and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Suffice it to say that it is not for the Army, the H. E. W., the American jury, or even the courts themselves to bestow recognition or non-recognition qua religion upon any particular religious sect. For our purposes and with respect to the Reverend Barr, it is enough, absent rebuttal, that the Church is incorporated in New York as a religious corporation, that it has a substantial membership and a functioning divinity school which ordains its ministers.
 
 
 13
 It may well be that courts and administrative agencies will have to continue to cope with mail fraud and tax exemption situations created by false prophets under the guise of pseudo-religions. The necessity of protecting a public, particularly gullible when a religious element is injected, against quack preachings, literature and mechanical devices will require such agencies as the Food and Drug Administration to be ever watchful. It is not for us to prejudge the benefits, or lack thereof, which may come to the members of the Church from being audited while holding in their hands two tin soup cans linked by an electrical apparatus. The use, if any, which the Reverend Barr may make of these E-meters, now released by virtue of Judge Wright's decision, is for the future. For the present is the Reverend Barr's status vis-a-vis the Army. Judge Tenney decreed that "petitioner be discharged from the United States Army Reserve forthwith." This decision was based upon petitioner's then status as a divinity student. Because of the representation now made that he is a minister, the following paragraphs of Circular 135-10 would appear to apply:
 
 
 14
 "b. Religious reasons.
 
 
 15
 (1) Regular or duly ordained minister of religion.
 
 
 16
 Applications for discharge based upon religious reasons to become a regular or duly ordained minister of religion will be sustantiated [sic] by appropriate documentary evidence as follows:
 
 
 17
 (a) Statement from the appropriate authority of the church, religious sect, or organization that the enlisted member has met the requirements for recognition as a regular or duly ordained minister of religion."
 
 
 18
 Despite his period of ministerial studies and his now becoming a minister, petitioner still is enrolled in the Army Reserve. His status at the time the Army and the District Court made their rulings was that of a Ready Reservist "preparing for the ministry in a recognized [assumed for purposes of this decision] theological or divinity school." 32 C.F.R. § 125.5(b). Under these circumstances such a Reservist "shall be transferred to the Standby Reserve." However, if he wishes to seek "Separation from service," 32 C.F.R. § 561.37, and "Discharge from Reserve duty status," § 561.37(b), he must do so pursuant to this section. "Authority to discharge," § 561.37(c), is delegated to certain officers, and the procedure to obtain such discharge is set forth in § 561.37 in minute detail. Thus at the time of the decision below, § 561.37(c) (16) would have been applicable but because petitioner has now become "a regular or duly ordained minister of religion," § 561.37(c) (15) would appear to be the paragraph controlling petitioner's destiny. Therefore, because the Army did not have the facts now presented or the District Court's (and our) views as to "Scientology" as a religion before it when passing upon petitioner's case, we remand for appropriate action by respondents in accordance with this opinion and, to this extent, modify the judgment by the court below, discharging petitioner forthwith.
 
 
 19
 Judgment modified.